IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WILLIAM MARK VANPETEGHAM                                    PLAINTIFF


V.                                    NO. 11-5067

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration           DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, William Mark Vanpeteghham, brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act).  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff filed his current applications for DIB and SSI on July 17, 2007, alleging an

inability to work since May 31, 2007, due to "Vertebraes [sic] and discs in lower back and neck."

(Tr. 128-130, 149, 152).  Plaintiff maintained insured status through September 30, 2008.  (Tr.

149).  An administrative hearing was held on July 7, 2009, at which Plaintiff appeared with

counsel and testified.  (Tr. 6-34).

By written decision dated February 10, 2010, the ALJ found that during the relevant time

-1-

period, Plaintiff had an impairment or combination of impairments that were severe - chronic back and neck pain, and seizure disorder. (Tr. 51). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4. (Tr., 51). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work:

> except the claimant can occasionally lift and carry 20 pounds and frequently 10 pounds. He can sit for a total of 6 hours in an 8 hour workday and he can stand and/or walk for 6 hours in an 8 hour workday. He can occasionally work overhead and reach overhead and can frequently reach in other directions. He must avoid hazards, including working at unprotected heights and moving machinery, to include operating motor vehicles.

(Tr. 52). With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform other work in positions such as: storage facility rental clerk; furniture rental clerk; or retail sales attendant. (Tr. 55).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 13, 2011. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned pursuant to the consent of the parties. (Docs. 6, 8, 9).

## II.   Evidence Presented:

Plaintiff was born in 1966 and received his GED. (Tr. 149, 158). In March of 2005, while at work as a concrete finisher, Plaintiff felt a pop in his lower back. (Tr. 226). A week later, when he did not improve, he went to the hospital, and radiographs revealed that he had degenerative disc disease in his cervical and lumbar spine. (Tr. 226).

-2-

At the hearing, Plaintiff testified that prior to the injury, he was able to "do everything." (Tr. 16). However, now he claims that he can just basically do the dishes, and spends the day lying on the couch and watching television. (Tr. 13-14).

The medical records reveal that Plaintiff was treated for various injuries and conditions between 1999 and 2003, (Tr. 410-411, 415-416, 442-443, 456, 462-464, 507, 509, 511, 518). One of the treatments occurred on December 13, 2001, when Plaintiff presented to Columbia Raulerson Hospital, complaining of seizures. (Tr. 408). The impression was:

1. New onset of seizures
2. History of drug abuse and alcohol abuse

(Tr. 408). A CT of his head revealed a normal unenhanced CT , and x-rays of his chest revealed no active cardiopulmonary process. (Tr. 512, 514). On December 14, 2001, consulting physician, Dr. Peter Aldana, evaluated Plaintiff's seizures, and reported that Plaintiff had a history of panic disorder, alcohol abuse and anxiety, and pancreatitis. (Tr. 404). Plaintiff denied any alcohol abuse at that time, but stated that he did use marijuana recreationally, as he felt that it decreased his anxiety. (Tr. 404). Plaintiff also claimed he wanted to quit drinking. (Tr. 404). Dr. Aldana reported that at that point, there was no clear etiology of his seizure. "The possibilities that this may be post traumatic as he does have history of a concussion; could also be secondary to alcohol abuse and/or drug abuse." (Tr. 405).

On March 21, 2003, Plaintiff fell off of a ladder, and x-rays of his left shoulder, taken at Columbia Raulerson Hospital, indicated no acute left shoulder abnormality. (Tr. 496, 498). X-rays of his lumbar spine revealed mild L4-5 and L5-S1 degenerative disease, with no acute lumbar spine abnormality. (Tr. 499). X-rays of his thoracic and cervical spine revealed no acute

-3-

thoracic or cervical spine abnormality.  (Tr. 501-502).

On March 10, 2005, Plaintiff presented to the hospital, where the admitting diagnoses was lumbago.  (Tr. 432).  X-rays of his lumbar spine revealed an old deformity anterior upper edge of the 5th lumbar vertebra, and no acute change was evident.  (Tr. 494).

On April 23, 2005, Plaintiff was given an admitting diagnoses at the hospital of alcohol abuse - unspecified.  (Tr. 428).  CT of the head without IV contrast revealed no acute intracranial pathology.  (Tr. 486).  X-rays of his lumbar spine revealed:

> deformity involving the anterior superior aspect of the L5 vertebral body. I cannot exclude a fracture in this region and CT scan would be helpful for further evaluation.

(Tr. 488).   X-rays of Plaintiff's thoracic spine revealed no evidence of acute fracture or subluxation involving the thoracic spine.  (Tr. 490).

On September 9, 2005, Plaintiff saw Dr. Matthew McLean at The Muscle, Bone & Joint Center, for evaluation of his lower back and neck.  (Tr. 226).  Dr. McLean reported that Plaintiff had cervical and lumbar degenerative disc disease, and would undergo a course of physical therapy.  (Tr. 226).

On September 21, 2005, a MRI of Plaintiff's cervical and lumbar spine revealed the following:

> MRI of cervical spine
> 1.    Moderate ddd at C5-C6 causing mild central canal stenosis and mild to moderate bilateral neural foraminal stenosis;
> 2.    Small right paracentral disc protrusion at C6-C7 without significant stenosis.
>
> MRI of lumbar spine
> 1.    Mild ddd at L4-L5 and L5-S1 with mild bilateral neural foraminal stenosis.

-4-

      2.       Broad based left paracentral disc protrusion at L5-S1 causing left
                  lateral recess stenosis and mass effect on the left S1 nerve root.

(Tr. 227).

On October 10, 2005, Plaintiff returned to The Muscle, Bone & Joint Center, and reported to Dr. McLean that he underwent two weeks of physical therapy and had to stop due to problems with his gallbladder. (Tr. 225). Dr. McClean reviewed the MRI's and gave the following impression:

      1.  Cervical ddd
      2.  Lumbar ddd
      Plaintiff will continue with pt. I have given him a new prescription for
      Lodine, as well as Vicodin.

(Tr. 225). There are no records revealing whether Plaintiff continued with physical therapy.

On February 22, 2007, Plaintiff presented himself to the hospital, complaining of a headache. (Tr. 420). A CT of his head indicated no acute intracranial abnormality. (Tr. 483).

On May 18, 2007, Plaintiff presented himself to Northwest Medical Center, complaining of back and neck pain. (Tr. 219). He reported that this started three weeks previously, when he was in a fight with another individual. (Tr. 221).

On June 8, 2007, Plaintiff presented himself to Northwest Medical Center, reporting that he was in a bicycle wreck. (Tr. 213). CT and x-rays were negative, and the impression was: contusion right hip, neck strain, abrasions, and right shoulder strain. (Tr. 213).

On June 21, 2007, Plaintiff presented himself to FirstCare South, complaining of back pain, with the pain radiating to his neck. (Tr. 263). Plaintiff reported his previous injury to his back while at work, and also reported that surgery was recommended, although he never had surgery. (Tr. 263). Inspection revealed his cervical spine was tender to palpation, and there was

-5-

lumbosacral spine tenderness. (Tr. 264). Plaintiff was assessed with cervical and lumbar disc degeneration. (Tr. 264). It was further reported that Plaintiff was anxious but not depressed, and there was no suicidal ideation. (Tr. 264).

On August 23, 2007, Plaintiff visited the Northwest Arkansas Free Health Clinic, where he reported that he smoked 1 ½ packs of cigarettes per day, and did not drink. (Tr. 288). He complained of back/neck pain, depression, and anxiety. (Tr. 288). The assessment was: chronic degenerative joint disease, for which he was taking over-the-counter Aleve and Tylenol; depression, for which he had taken Paxil in the past; heavy smoker; and history of drug and ETOH overuse. (Tr. 288). He was prescribed Fluoxetine for nerves. (Tr. 288).

On October 1, 2007, Dr. William Collie, a non-examining physician, completed a Physical RFC Assessment. (Tr. 230-237). Dr. Collie found that Plaintiff could occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (Tr. 231). Dr. Collie found that Plaintiff had no postural, visual, communicative, or environmental limitations, but that Plaintiff was limited in reaching all directions (including overhead). (Tr. 233). In his additional comments, Dr. Collie reported that the MER reflected work injury to the spine prompting radiographs and MRI of the spine, and that Plaintiff's activities of daily living were "marginally credible." (Tr. 237). He also noted that a pain form was not returned, and accordingly, "evidence in the file supports an RFC of Light with overhead reaching limitations." (Tr. 237).

-6-

On October 12, 2007, Plaintiff presented himself to Northwest Medical Center, complaining that he had been sober for 8 months and went on a binge and consumed 8 beers the previous night. (Tr. 250). He was assessed with acute pancreatitis, ethanol abuse, and tobacco abuse. (Tr. 252). A CT of his abdomen revealed a pathy[1] atelectatic[2] changes dependently at the lung bases, and that the findings were consistent with pancreatitis with "no evidence pseudocyst." (Tr. 260). It was otherwise unremarkable. An abdominal ultrasound indicated a little ascites[3] near the gallbladder, but the study was otherwise unremarkable. (Tr. 261). An x-ray of the abdomen was negative. (Tr. 262). In the discharge summary, it was reported that his abdominal pain had been reduced, and that his condition had stabilized. (Tr. 249). Plaintiff was placed on medications, and was to follow up at a free clinic in one week. (Tr. 249). There is no record showing that Plaintiff followed up with the free clinic.

On December 22, 2007, Plaintiff presented himself to Northwest Medical Center in Springdale, complaining of abdominal pain. (Tr. 271). He reported binge drinking that day. The clinical impression was acute abdominal pain. (Tr. 273). An x-ray of his abdomen was unremarkable, an x-ray of his chest revealed no acute disease, and a CT of his abdomen and pelvis revealed a 1 cm. left renal cyst, no evidence of pancreatitis, and no abnormal abdominal mass or fluid collections were seen. (Tr. 281-284).

On January 13, 2008, Plaintiff presented himself to Northwest Medical Center of

---

[1]Pathy - A word termination denoting (a) a feeling, (b) a disease, (c) a system of treating disease. Id. At 1418.

[2]Atelectatic - Pertaining to or chearacterized by atelectasis.
Atelectasis - 1. Incomplete expansion of a lung or a portion of the lung; it may be a primary (congenital), secondary, or otherwise acquired condition. 2. Airlessness or collapse of a lung that had once been expanded. 3. Absence of air in a normally air-filled space such as the middle ear. Id. At 173.

[3]Ascites - Effusion and accumulation of serous fluid in the abdominal cavity. Id. At 164.

AO72A
(Rev. 8/82)

Springdale, complaining of hip and back pain. (Tr. 300). The impression was fall-left hip sprain, and an x-ray of his hip revealed no radiographic evidence of acute abnormality. (Tr. 311).

On March 21, 2008, Plaintiff was presented to Northwest Medical Center for a suicide attempt. (Tr. 387). It was reported that he had moved here from Florida, and lived with his brother, who was about to lose his home. (Tr. 387). It was reported that he had a history of polysubstance abuse and was currently drinking alcohol, although he said not on a daily basis. Plaintiff reported that he had no job, and said he hurt his back several years previously, and in his mind had been disabled and unable to work for many years. (Tr. 387). He further reported that Prozac did not help him. (Tr. 387). It was reported that his past medical history included depression and anxiety and a previous suicide attempt by hanging, and pancreatitis. His assessment was:

1. Suicide attempt
2. Severe depression
3. Chronic pain, narcotic use

(Tr. 388). Plaintiff reported that he was depressed, and tried to kill himself that morning. He reported that he drank 80 ounces of beer during the night and that his last ETOH was consumed about an hour previously. (Tr. 326). The doctor reported that he told Plaintiff that he was irresponsible and that only under a controlled environment would he give him any sort of pain medication. Since he was going to be in the hospital, the doctor did allow some pain medication. (Tr. 388). Plaintiff had superficial lacerations to his right wrist and cigarette burns on his knees. (Tr. 326). Plaintiff reported that he could not afford percocet or prozac. (Tr. 326). The impression was:

1. Abrasion, right wrist

-8-

    2. Alcohol Abuse
    3. Suicide attempt
    4. Suicide ideation
    5. Acute pancreatitis

(Tr. 334). At the time of Plaintiff's discharge, his prognosis was fair. (Tr. 385). The report indicated that Plaintiff agreed to stay with his nephew until a bed was available at Decision Point. (Tr. 385). There is no record to indicate whether Plaintiff ever went to Decision Point.

On October 10, 2008, Plaintiff presented himself to the hospital, complaining of abdominal pain, and left lower quadrant pain. (Tr. 418). A CT of his abdomen with contrast revealed a left renal cyst, but was otherwise unremarkable. A bibasilar[4] hypoventilatory change was seen at the lung bases, and a radiograph of the abdomen was unremarkable. (Tr. 480, 482).

On January 23, 2009, Plaintiff presented himself to Delray Medical Center, complaining of having a seizure. (Tr. 394). It was reported that Plaintiff had a history of seizures, approximately 8 years previously, "that may be in conjunction with drinking," and that he had a history of alcoholic pancreatitis as well. (Tr. 394). The report indicates that Plaintiff stated he had not had a drink in 19 months. (Tr. 394). Plaintiff reported he smoked 2 packs of cigarettes per day, and that he had his last drink almost two years previously. (Tr. 394). A neurology evaluation was recommended, and smoking cessation counseling was given. (Tr. 395). A CT of his brain revealed a normal study. A MRI of his head was unremarkable, and an EEG revealed no evidence for epileptiform or paroxysmal transient activity. (Tr. 398-399).

One of the consulting physicians, Dr. Michael J. Cochran, reported that Plaintiff said he had been sober for 18 months. (Tr. 391-392). He also reported that Plaintiff smoked 2 packs

---

[4]Bibasilar - Pertaining to or affecting the basis of both of a pair of structures or organs. Id. At 216.

of cigarettes per day and "has no alcohol use." (Tr. 392).  The impression was "seizure disorder, recurrent," with the last seizure occurring about six years ago.  (Tr. 392).  Dr. Cochran stated that Plaintiff would likely require an anticonvulsant, and recommended Dilantin, "since it is not as likely that he would be compliant with other medications."  (Tr. 392).  Before starting Dilantin, Dr. Cochran recommended that an EEG be done to evaluate for possible seizure focus, and a MRI of the brain as well as a laboratory metabolic screen.  (Tr. 392).

On January 25, 2009, the discharge summary reported that Plaintiff had been sober for a year and a half, and that he had a MRI and an EEG, both of which were unremarkable.  (Tr. 393).  It was recommended that he not drive for six months, and that he should follow up in the physician's office in three to four weeks.  (Tr. 393).  There is no record that Plaintiff followed up.  Instead, the next medical record is dated June 29, 2009, from the Washington Regional Medical Center.  (Tr. 561-562).  A CT scan was done on Plaintiff's abdomen and pelvis with contrast, and the impression was:

1. No acute inflammatory process within the abdomen or pelvis
2. Mild sigmoid diverticulosis without findings for acute diverticulitis
3. Simple cyst of the left kidney measuring 1.7 cm in diameter
4. Left sided bochdalek[5] hernia

(Tr. 562).

At the hearing, Plaintiff stated that all he did all day was watch crime channels on television and wash the dishes.  (Tr. 15-17).  He stated that he could take care of his own personal hygiene and that, other than Demerol, he was not on any other medications, because he could not afford them.  (Tr. 18-20).  He testified that the doctors told him to go see a specialist,

---

[5]Bochdalek hernia - A congenital diaphragmatic hernia due to failure of closure of the pleuro-peritoneal hiatus (foramen of Bochdalek). Called also *foramen of Bochdalek, h., parastrural h.,* and *restrosternal h.* Id. at 859.

-10-

and one doctor told him he might need surgery, but that he did not have insurance.  (Tr. 23).

Plaintiff reported in his disability reports that he was in pain all the time.  (Tr. 152, 174, 184).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be

affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.

3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports

the Commissioner's decision, the Court may not reverse it simply because substantial evidence

exists in the record that would have supported a contrary outcome, or because the Court would

have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In

other words, if after reviewing the record, it is possible to draw two inconsistent positions from

the evidence and one of those positions represents the findings of the ALJ, the decision of the

ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity.  Pearsall v.

Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A),

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3),

-11-

1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

IV.    Discussion:

Plaintiff raises the following issues on appeal: 1)  Defendant erred in failing to consider all of the Plaintiff's impairments in combination; 2) Defendant erred in his analysis and credibility findings in regard to Plaintiff's subjective complaints of pain; and 3) Defendant erred in finding that the Plaintiff retained the RFC to perform less than a full range of light work. (Doc. 8 at p. 2).

A.  Plaintiff's Impairments:

The ALJ found that Plaintiff's severe impairments imposed more than a slight abnormality or combination of slight abnormalities which had more than a minimal effect on Plaintiff's ability to perform work related activities, and that Plaintiff's impairments did not meet

-12-

the criteria of any listed impairments. (Tr. 51-52). The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (Tr. 51). Such language demonstrates the ALJ considered the combined effect of Plaintiff's impairments. Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994).

The Court finds that, considering the record as a whole, the ALJ properly addressed Plaintiff's impairments, singly and in combination.

**B.     Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his conditions were disabling, the evidence of record does not support this conclusion.

With respect to Plaintiff's daily activities, the ALJ found, after careful consideration of the evidence, that Plaintiff's statements concerning the intensity, persistence and limiting effects

-13-

of the symptoms were not fully credible to the extent they were inconsistent with the RFC assessment. (Tr. 53). The ALJ noted that the limited daily activities Plaintiff asserted could not be objectively verified with any reasonable degree of certainty, and that even if Plaintiff's daily activities were truly as limited as he alleged, it was difficult to attribute that degree of limitation to Plaintiff's medical condition, based upon the relatively weak medical evidence and other factors. The ALJ therefore concluded that Plaintiff's reported limited daily activities were outweighed by the other factors discussed in the decision. (Tr. 53). The Court agrees.

With respect to Plaintiff's back and neck pain, the medical records indicate that Plaintiff suffers from degenerative disc disease of the cervical and lumbar spine. Surgery had been recommended, but was not performed. A report from Dr. McLean of The Muscle, Bone & Joint Center indicates that Plaintiff was to continue with physical therapy, and there is no indication that this was done. Furthermore, events subsequent to Plaintiff's alleged onset date indicate Plaintiff engaged in activity that is not consistent with alleged disability. For example, Plaintiff was involved in a fight with another individual on May 18, 2007 (Tr. 221); was injured when riding a bicycle on June 21, 2007 (Tr. 213); was injured when a garbage can fell on his right ankle on November 8, 2007 (Tr. 241); and experienced a seizure in late January of 2009, while helping a friend with some "hoses." (Tr. 394). Medical records after June 21, 2007, indicate that with the exception of one complaint of hip and back pain as a result of a fall, Plaintiff's subsequent medical visits related to his heaving drinking, contusion of the right ankle, groin pain, suicide attempt, abdominal pain, cellulitis of the leg, and seizure. (Tr. 240-242. 248-250, 265, 271, 288, 387, 390, 393, 394, 401, 418, 561, 563).

With respect to Plaintiff's complaints of pancreatitis and depression, the records reveal

-14-

that Plaintiff received treatment for pancreatitis and depression, but Plaintiff did not indicate in his application that these conditions limited his ability to work.  This fact is significant, even if the evidence of depression and pancreatitis was later developed.  See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).

The Court also notes that the ALJ indicated that Plaintiff was provided two separate opportunities to undergo consultative physical examinations for the purpose of determining his ability to perform sustained work activity, but Plaintiff did not keep either of his scheduled appointments.  (Tr. 54).  This was not disputed by Plaintiff in his brief.

In addition, Dr. Collie indicated in his report that Plaintiff did not return a pain form. Plaintiff also gave an inaccurate statement to medical health providers regarding his drinking. A report dated January 23, 2009, from Delray Medical Center, indicates that Plaintiff stated he had not had a drink in 18 or 19 months.  (Tr. 391-394).  However, only 10 months earlier, on March 21, 2008, Plaintiff reported to Northwest Medical Center in Springdale that he drank at least 80 ounces of beer that day because he was depressed.  (Tr. 326).

The Plaintiff testified at the hearing that he was not taking any medications other than Demorol, which was only prescribed to him the prior week, because he could not afford the medications.  (Tr. 19-20).  However, there is no indication that Plaintiff sought continuing assistance from a free health clinic.  Although Plaintiff did visit the Northwest Arkansas Free Health Clinic on August 23, 2007, where it appears that Fluoxetine was prescribed for his nerves (Tr. 288), there is no indication that Plaintiff continued to seek further treatment from the free clinic.  "A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain

-15-

medications." <u>Singh v. Apfel</u>, 222 F.3d 448, 453 (8th Cir. 2000).  Failure to seek treatment or follow a prescribed course of remedial treatment without good reason is inconsistent with allegations of disabling pain.  <u>See Brown v. Barnhart</u>, 390 F.3d 535, 540-541 (8th Cir. 2004); <u>Edwards v. Barnhart</u>, 314 F.3d 964, 967 (8th Cir. 2003); <u>Novotny v. Chater</u>, 72 F.3d 669, 671 (8th Cir. 1995)(per curiam).  Economic justifications for  lack of treatment can be relevant to a disability determination.  <u>Murphy v. Sullivan</u>, 953 F.2d 383, 386 (8th Cir. 1992).  While it is for the ALJ in the first instance to determine a plaintiff's motivation for failing to follow a prescribed course of treatment, or to seek medical attention, such failure may be excused by a claimant's lack of funds.  <u>Tome v. Schweiker</u>, 724 F.2d 711, 714 (8th Cir. 1984); <u>Jackson v. Bowen</u>, 866 F. 2d 274, 275 (8th Cir. 1989).  In the present case, Plaintiff states that he could not afford medications or treatment throughout the relevant time period.  However, he was apparently able to afford alcohol, since he continued to drink alcohol heavily and, although Plaintiff was advised to quit smoking, he was apparently able to afford cigarettes, as he continued to smoke up to 2 packs of cigarettes per day.  The ALJ was allowed to consider Plaintiff's failure to stop smoking when making his credibility determination in this case.  <u>See Mouser v. Astrue</u>, 545 F.3d 634, 638 (8th Cir. 2008).

Based upon the foregoing, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**C.    RFC Assessment:**

RFC is the most a person can do despite that person's limitations.  20 C.F.R. §404.1545(a)(1).  It is assessed using all relevant evidence in the record.  <u>Id</u>.  This includes medical records, observations of treating physicians and others, and the claimant's own

AO72A
(Rev. 8/82)

description of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ found that Plaintiff had the RFC to perform light work with certain limitations.  The ALJ found that after a careful review of the evidence, there was no opinion evidence provided in the record that supported the level of severity alleged by the Plaintiff. (Tr. 54).  With respect to Plaintiff's seizure disorder, the ALJ noted that although a CT scan of Plaintiff's head was normal, the attending physician diagnosed Plaintiff with seizure disorder and recommended Plaintiff be placed on an anticonvulsant.  The ALJ gave probative value to this opinion, which is reflected in the RFC assessment.  The ALJ also referred to Plaintiff's failure to keep scheduled appointments to attend a consultative examination by a qualified physician, which is not disputed by Plaintiff.  He therefore gave Dr. Collie's opinion, set forth in the Physical RFC Assessment, some weight, acknowledging that it was non-examining. (Tr. 54).  The ALJ concluded that while the record indicated Plaintiff had some limitations, his allegations of incapacitating symptoms were generally unpersuasive and inconsistent with the medical evidence as a whole. (Tr. 54).

-17-

Recognizing Dr. Collie's limitations given in his Physical RFC Assessment, the ALJ limited Plaintiff's ability to work overhead and reach overhead and to reach in other directions. He also indicated that Plaintiff must avoid hazards, including working at unprotected heights and moving machinery, to include operating motor vehicles. These are the only limitations that are supported by the record.

The Court finds there is substantial evidence to support the ALJ's RFC findings.

**D.  Hypothetical Question to VE:**

In written interrogatories posed to the VE, the ALJ submitted the following hypothetical question:

> Please assume a hypothetical person younger individual with high school education and the same work history as the claimant. This person can occasionally lift/carry 20 pounds and frequently 10 pounds. He can sit for 6 hours and can stand/work for 6 hours. He can occasionally work overhead and can frequently reach in other directions. He must avoid hazards, including unprotected and moving machinery, to include operating motor vehicles. Assume there is no past relevant work to which the person can return and that transferable skills are not an issue. Are there jobs in the national and regional economy this person can do? If so, please list examples, three if possible, along with DOT identification, and relevant numbers in the state and national economies.

(Tr. 209-210). In response to the question, the VE responded with the following positions: storage facility rental clerk; furniture rental clerk; and retail sale attendant (self service store).

The Court believes the first hypothetical question the ALJ proposed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). The Court further believes that the VE's response to the hypothetical question constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing a full

-18-

AO72A
(Rev. 8/82)

range of light work with certain limitations, at such positions as storage facility rental clerk; furniture rental clerk; and retail sale attendant. <u>Pickney v. Chater</u>, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from VE based on properly phrased hypothetical question constitutes substantial evidence).

**V.     Conclusion:**

Accordingly, the Court hereby affirms the ALJ's decision and dismisses Plaintiff's case with prejudice.

DATED this 15th day of May, 2012.

/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)